Barbara HALE, Plaintiff-Appellant,

v.

COMMERCIAL UNION ASSURANCE COMPANIES, Defendant-Appellee.

Supreme Court of Tennessee,
at Jackson.

Aug. 30, 1982.

Lloyd C. McDougal, III, Memphis, for plaintiff-appellant.

Terry C. Cox, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

This worker's compensation case comes to us on an appeal by plaintiff of the trial court's granting of defendant insurance company's motion to dismiss. The ground on which the court granted the motion was his finding that plaintiff had elected to receive benefits available under Arkansas law, and that thus she was precluded from seeking Tennessee benefits.

Since the case did not proceed to a trial on the merits, the record is quite abbreviated. We discern that sometime in 1977, plaintiff was employed in Memphis by Payless Shoes. She was a resident of Memphis and her initial period of work was there also. At some point, we do not know when, she was sent by Payless to manage a store operated by it in Russellville, Arkansas. On or about September 21, 1979, she was injured in the course and scope of her employment. In October, she came to Memphis, where she received most of her medical treatment and incurred most of her medical expenses. We do not have a clear idea of the nature of her injuries.

On September 18, 1980, plaintiff filed this action in Shelby County. Among other things, she alleged that defendant was licensed and authorized to write insurance in Tennessee and was Payless' worker's compensation carrier; that the court had jurisdiction under TCA § 50–917 because the contract of hire was made in Tennessee; that there was no issue as to notice; and that plaintiff had incurred medical expenses, had been temporarily totally disabled, and was permanently disabled to the body as a whole. She prayed the court to determine the amount of each type of compensation to which she was entitled.

Defendant's responsive pleading was a combined motion to dismiss and answer. The motion asserted that the accident occurred in Arkansas, plaintiff was a resident of Arkansas and had lived there for a "considerable period of time"; and that she "accepted benefits under the Arkansas Workmen's Compensation Law and had elected to recover compensation under the Arkansas Workmen's Compensation Act." Among the points raised in the answer was that plaintiff had elected to take compensation under the Arkansas act. The answer went on to say that she had already received benefits under Arkansas law: nine weeks of temporary total disability and "substantial" medical payments. Defendant asserted that the court was without jurisdiction.

With the pleadings in this posture, both parties filed affidavits. Defendant's was the affidavit of Mr. Sain, claims manager of its Little Rock, Arkansas office. It admitted that Commercial Union was Payless Shoes' Arkansas worker's compensation carrier. It stated that she made a "claim for benefits under the provisions of the Arkansas Worker's Compensation Act." It further said that she was paid the nine weeks of temporary total disability; that she was directly reimbursed for "certain" medical expenses; and "that at the direction of Barbara Hale, hospitals and treating physicians were paid for their services rendered under the provisions of the Arkansas ... Act." Documents were attached to the affidavit. These consisted of claims for payment, submitted by doctors, hospitals, etc., which were shown as having been paid out of the Little Rock claims office; and copies of checks to the doctors, hospitals, and the claimant.

Plaintiff's affidavit covered several areas. She maintained that she had been a Tennessee resident (in the sense of domicile) throughout the entire relevant period of time; that she had been employed and had worked in Memphis and, after "several years" had been transferred to the Russellville, Arkansas store; that when she had been required to move there, her understanding had been that it would not be a permanent move, but merely a job assignment. She stated that even while living in Arkansas, she did not intend to make it her home. She did the minimum necessary to physically live in Arkansas—find living quarters and change her automobile registration and driver's license, as required by law. She still considered herself a Tennessean.

The affidavit then stated that she had come to Tennessee for treatment about a month after her injury and had been here at all subsequent times. After coming to Memphis, she told her supervisor, Mr. Booth, whom she had already notified of her injury, that she needed funds to meet expenses. Mr. Booth told her that she would receive compensation out of Arkansas because that was where she had been injured. She did not question this statement by him, because she did not know what benefits she might be entitled to and because she was on a great deal of medication. Thus, she strongly denied having "elected to make a claim with the Arkansas Workmen's Compensation Commission." All that she wanted was some money to meet her expenses but she "did not intend for this to be a choice of Arkansas benefits as opposed to Tennessee benefits."

After she came to Memphis for treatment, she stated that Payless transferred her back to a Memphis shoe store. She was primarily treated in Memphis, and received no benefits until after she had left Arkansas. She concluded by affirmatively stating that she wanted her claim to be determined in a Tennessee, not an Arkansas, court.

The trial court found, based only upon the pleadings and affidavits, that plaintiff had filed a claim for benefits under the provisions of Arkansas law. He further found that she had received temporary and medical benefits, a fact which is undisputed. The court found that plaintiff did not allege that she had been misled as to her benefits coming out of Arkansas; that she knew they were to be Arkansas benefits and had instructed her physicians to submit their bills to the Arkansas carrier. Thus, the court concluded plaintiff had clearly elected her Arkansas remedy.

We do not agree that the court was entitled to draw the conclusions which he drew from the parties' affidavits, and we hold that a very definite question of fact was created. In considering a motion to dismiss (which, with documents outside the pleadings, would have been treated as a motion for summary judgment, TRCP 12.02(6), 56),

the court must of course examine matters in the light most favorable to the non-moving party; e.g., *Sullivant v. Americana Homes, Inc.,* 605 S.W.2d 246 (Tenn. App. 1980).

There is nothing whatever in the record to support the conclusory statements by defendant's claims manager, which the trial court accepted as facts, that plaintiff had made any claim under the Arkansas Compensation law; or that she had told her physicians to submit their bills *specifically* to the Arkansas carrier. The documents supporting the claims manager's affidavit contain no application, claim, or any sort of document signed by anyone, much less the plaintiff. There was no indication whatsoever in defendant's presentation tending to show that plaintiff had knowledge of or participated in the claim procedure. There is a fortiori nothing to show that *she* selected Arkansas benefits as opposed to Tennessee benefits. The conclusions stated by the claims manager, which the court found to be true, are totally unfounded, based upon the record before us. Certainly the fact that Arkansas benefits were in fact ultimately paid, proves nothing in and of itself in regard to the issue of whether plaintiff instigated the process or elected—made a knowing, informed choice—to seek an Arkansas remedy in the first place.

Turning to the plaintiff's affidavit, and taking its contents as true, *Sullivant, supra,* we find clear assertions that plaintiff accepted the *employer's* decision to proceed through Arkansas, without knowledge that she could have proceeded anywhere else. The employer voluntarily paid benefits, but presumed to select Arkansas because that is where the injury took place. Plaintiff's affidavit states that she was unaware that benefits could be paid on some other basis elsewhere, or that higher benefits might be available elsewhere. Naturally, she accepted the benefits that were in fact paid to her or on her behalf.

There are three previous Tennessee decisions which bear upon the election of remedies issue. Two of these, we feel, are distinguishable from the record in this case as

it presently stands; on the other hand, the third is closely analogous.

The two distinguishable cases are *Tidwell v. Chattanooga Boiler & Tank Co.,* 163 Tenn. 420, 43 S.W.2d 221 (1931); and *True v. Amerail Corp.,* 584 S.W.2d 794 (Tenn. 1979). In *Tidwell,* the claimant's decedent had worked for a Chattanooga company and had worked primarily in that city, but had been sent to install equipment in Ohio and was killed there. The claimant, his widow, proceeded against defendant for compensation in Ohio and obtained an award from the Ohio Industrial Commission. The sole defense to the action which she brought in Tennessee for benefits under our statute, was the Ohio proceedings. This Court reasoned that benefits were available as a result of decedent's contract of employment with defendant; that out-of-state accidents were covered if the contract of employment was made in Tennessee; and that the rights and remedies under the Act were exclusive. This meant that decedent's contract of employment included a term excluding "all other remedies, at common law or otherwise, on account of her husband's death." 163 Tenn. at 424, 43 S.W.2d 221. Therefore, the widow had renounced the employment contract by choosing to proceed in Ohio: She could not repudiate the Tennessee benefits in the Ohio suit, and claim them in her subsequent suit. *Tidwell* is the cornerstone of the Tennessee principle of election between two states' remedies.

In the *True* case, *supra,* Tennessee was where the plaintiff lived, defendant had offices, and the employment contract was made. Plaintiff also worked primarily in Tennessee but was injured in Virginia. He sued in this state within three months of his injury. We noted that the complaint was "somewhat meager." 584 S.W.2d at 795. Amerail's defense was that plaintiff could have proceeded under Virginia or Tennessee law, but had elected and accepted benefits under Virginia law. It then moved for summary judgment based on its answer, exhibits, and the affidavit of its insurer's claim manager. The motion asserted that plaintiff had " 'instituted a proceeding and

procured a recovery of compensation' " in Virginia, *id.,* so that the award by the Virginia Commission was entitled to full faith and credit and barred the instant suit. Documents submitted by Amerail included official award forms of the Virginia Commission, some of which were signed by plaintiff.

In the face of such showings by the defendant, plaintiff "filed no countervailing affidavits as permitted by Rule 56.03, TRCP, and as required by Rule 56.05. Instead, he elected to rest upon the allegations of his abbreviated complaint. Thus, the matter is before the Court on a record built by Amerail." *Id.* at 796. We affirmed, under those circumstances, the trial court's grant of summary judgment in favor of Amerail. The record affirmatively showed participation by plaintiff in Virginia proceedings which resulted in an award, without any submission by plaintiff to explain or refute the prima facie showing of an election by him.

In contrast to *Tidwell* and *True* stands the third Tennessee case, *Thomas v. Transport Insurance Co.,* 532 S.W.2d 263 (Tenn. 1976). The employer, a trucking company, had its principal place of business in West Memphis, Arkansas. Plaintiff had been employed for over fourteen months as a repairman and mechanic (not as a driver) and was injured at a place of business of the employer located in Memphis.

The complaint alleged, and the answers denied, that the employment was covered by the Workers' Compensation Act of Tennessee. The complaint alleged, and the answers denied, that plaintiff had resided in Tennessee at the time of the accident. The complaint alleged that defendants "wrongfully" began paying benefits under Arkansas law and that, when plaintiff obtained counsel (thirteen months after the injury), he asked defendants to pay Tennessee benefits. The answers rejoined that plaintiff had made a binding election of Arkansas benefits: That he had received Arkansas benefits for more than a year, whereas he had received no Tennessee benefits.

One of the exhibits to the answers was the employer's first notice to the insurer of industrial injury. In a close parallel to what is found in the record of the case at bar,

> [the insurer] averred [in its answers to interrogatories] that it received a notice of the accident, and commenced paying Arkansas benefits immediately thereafter. It alleges that the employee "has accepted and continues to accept" Arkansas benefits, but makes no reference to any affirmative action taken by the plaintiff, in Arkansas or elsewhere, to assert or claim any rights under Arkansas law.

532 S.W.2d at 265. The plaintiff filed a motion to strike defenses, including the defense of a binding election. The trial court overruled this motion and granted a summary judgment dismissing the action, finding, inter alia, that plaintiff was barred from seeking Tennessee benefits by virtue of his acceptance of Arkansas benefits.

This Court held that a summary judgment was improper because several genuine issues of material fact were presented. One of these issues was whether or not the employee had elected Arkansas benefits. Our comments upon this issue were as follows:

> We further are of the opinion that an issue of fact, requiring a hearing and proof, or at least substantial affidavits was presented as to whether the employee had or had not made any sort of binding election to accept benefits under the workmen's compensation law of the State of Arkansas. As correctly pointed out by the trial judge, if the employee has taken any *affirmative action* to seek a recovery under the law of that state, or has *voluntarily, deliberately and with full knowledge of his options,* accepted benefits under Arkansas law, he may well be precluded by this election and may not be entitled to proceed in Tennessee. See *Tidwell v. Chattanooga Boiler & Tank Company [supra]*. On the other hand, if the employee, *while seriously injured and disabled, was simply sent checks by a workmen's compensation carrier, with no information as to the nature of the benefits being received,* he may not be so precluded. There needs to be a complete trial of all of the circumstances under which the benefits were commenced, including any representations made to or by the employee, and information developed as to whether the employee has indeed filed a claim with the Arkansas Workmen's Compensation Commission or not. Certainly the fact that the employee did receive benefits without question for over one year before taking any legal action is a circumstance against him; it is not conclusive or dispositive of the case, however, standing alone and without explanation. See Annot., 8 A.L.R.2d 628 (1949).

*Id.* at 267 (emphasis added).

The contrast between the fact situation presented in the *Thomas* case, as well as, apparently, this case; and a situation where the employee has truly made an election, is highlighted by further language from *True v. Amerail Corp., supra:*

> This [the *True* case] is not a case where an injured workman *passively accepted* benefits. Moreover, we cannot presume from a silent record [in *True,* plaintiff did not attempt to refute Amerail's prima facie showing of an election of Virginia benefits] that plaintiff did not have full knowledge of all his options. This is the type of proof that should have been presented by opposing affidavits to the motion for summary judgment.

584 S.W.2d at 794 (emphasis added).

■ We note that in *Thomas,* the plaintiff alleged that Arkansas benefits had "wrongfully" been paid to him, rather than Tennessee benefits. Additionally, in this case, the trial court found it significant that plaintiff did not purport to have been "misled" as to the source of the benefits which were voluntarily paid to her. We feel that we should therefore clarify the fact that bad faith, fraud or "wrongfulness" need not necessarily be present in order to hold that an employee who received voluntarily-paid benefits did not make a binding election of

another state's benefits. It is sufficient, under *Thomas* and in this case, if benefits were received and accepted by the employee without knowledge on his part that he could have made a claim in Tennessee, or without the degree of knowledge which is required in order for a binding election to be made.

The employee has alleged herein that her supervisor simply told her that her claim would be processed in Arkansas, and she did not dispute or question his statement. This is a sufficient averment, in an affidavit in response to a motion to dismiss charging an election, to create a question of fact. The employee, therefore, is entitled to a full hearing on this issue, in order to reveal all of the circumstances surrounding the making of the claim, etc., as delineated in the quotation from the *Thomas* case, *supra*. The order of the trial court dismissing this action is reversed, and the cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the defendant.

Reversed and remanded.

HARBISON, C.J., and FONES, COOPER and BROCK, JJ.